HEIDE v. PANOULIAS.

(Circuit Court of Appeals, Second Circuit. June 12, 1911.)

No. 250.

1. PATENTS (§ 278*)—MATTERS REVIEWABLE—ISSUES NOT PRESENTED TO LOWER COURT.

On writ of error to review a judgment awarding damages for infringement of a patent, the court will not consider an objection to the validity of the patent which was not pleaded nor relied on below, and which, if it had been, might have been met by evidence.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 436; Dec. Dig. § 278.*]

2. PATENTS (§ 276*)—ACTIONS AT LAW FOR INFRINGEMENT—QUESTIONS FOR JURY.

In an action at law to recover damages for infringement of a patent, where the evidence is conflicting on the questions of invention disclosed by plaintiff's patent and of infringement, such questions are of fact for the jury.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 432–434; Dec. Dig. § 276.*]

3. TRIAL (§ 260*)—INSTRUCTIONS—REFUSAL OF REQUESTS.

The refusal of requests for instructions in an action for infringement of a patent held not error, in view of the charge given.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

4. APPEAL AND ERROR (§ 1001*)—ACTION AT LAW FOR INFRINGEMENT—CONCLUSIVENESS OF VERDICT.

In an action at law for infringement of a patent, where the jury has decided the questions of invention and infringement in one way, and no

error is found in the conduct of the trial, the appellate court will not set aside their verdict merely because it might have reached a different conclusion on the same record.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3928–3934; Dec. Dig. § 1001.*]

In Error to the Circuit Court of the United States for the Southern District of New York.

Action at law by Panayiotis Panoulias against Henry Heide. Judgment for plaintiff, and defendant brings error. Affirmed.

See, also, Panoulias v. Hawley, 178 Fed. 101..

Hunt, Hill & Betts (Geo. Whitefield Betts, Jr., and Francis II. Kinnicutt, of counsel), for plaintiff in error.

F. E. M. Bullowa, for defendant in error.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge. The patent is No. 663,359, issued December 4, 1900, to plaintiff for "dipping-frame for coating candies." The specification states that:

"This invention relates to dipping-frames for coating candies and more particularly chocolates; and the object thereof is to provide an improved dipping-frame of this class in which the candies or cores thereof are immersed in liquid chocolate or other material and are thus coated. A particular object of the present invention is to provide a dipping-frame of the class described with devices whereby the coated candies are marked to simulate the conformation of hand-dipped candies. The dipping-frame is adapted for either manual or mechanical operation. The invention consists in the novel construction and arrangement of parts hereinafter set forth."

Then follows a description of the apparatus, its parts, and mode of operation with references to the drawings. This description need not be here repeated. It concludes with the sentence:

"The ridges 13b and 13c simulate the ridges formed upon the coated candies by the drip of the mobile coating when the same are manually dipped and then suspended for hardening with the crown in the lowermost position."

The patentee adds:

"I do not limit myself to the specific construction and arrangement of parts herein described, but reserve the right to vary the same within the scope of my invention."

The second claim, which is the only one relied on, reads:

"2. A dipping-frame of the class described, provided with means for supporting the candy cores and with relatively-movable means for rearranging a portion of the coating thereof, whereby the complete candies are marked to simulate a drip formation of the coating thereof, substantially as shown and described."

[1] Upon the argument the court called attention to the statement that the object of the invention was apparently solely to simulate candies coated by hand, and thus to deceive the purchaser; reference being made to our former decision in Rickard v. Du Bon, 103 Fed. 868, 43 C. C. A. 360. In that case we had before us a patent for discoloring tobacco leaves in spots, so as to induce a belief that the leaves were

naturally spotted. We held that the patent statutes were not intended to extend protection to those who confer no other benefit upon the public than the opportunity of profiting by deception and that to warrant a patent the invention must be capable of some beneficial use as distinguished from a pernicious use. In the case at bar, however, no such defense was raised, nor was the utility of the invention disputed. Defendant's counsel now asks that he be allowed to reargue on this point, and to contend that the "court may take judicial notice that the patent is invalid for the reason stated." This should not be done. Plaintiff has had no opportunity to litigate that point, nor to put in evidence which might have avoided it. This judgment based on the verdict must stand or fall upon the record which was before the court and jury.

The main argument of defendant is directed to support the exceptions to the refusals of the trial judge to dismiss the complaint and to direct a verdict in favor of defendant on the grounds: (1) That the evidence showed that the plaintiff's patent was anticipated by prior patents and the prior art; and (2) that there was no evidence of infringement.

[2] Ordinarily the presence or absence of "invention" and "infringement" are questions of fact. When disposed of by the trier of the facts in an equity suit, his decision may be reviewed on appeal. When disposed of by the verdict of a jury, properly instructed, its decisions on those points are not reviewable on appeal. Defendant, however, relies upon Singer Co. v. Cramer, 192 U. S. 275, 24 Sup. Ct. 291, 48 L. Ed. 437, and other cases, which hold that, where these questions can be determined from a mere comparison of two or more patents, they should be decided by the trial judge, and the jury instructed accordingly. Thus:

"If it appears from the face of the instruments that intrinsic evidence is not needed to explain terms of art or to apply the descriptions to the subject-matter, so that the court is able to say from such mere comparison that the inventions are not the same, but different, then the question of identity is one of pure construction, and not of evidence, and consequently is matter of law for the court." Heald v. Rice, 104 U. S. 737, 26 L. Ed. 910.

But we do not find in these citations anything which disturbs the rulings heretofore announced by the Supreme Court, when the situation presented is the one ordinarily presented on the trial of a patent cause, with much more in the record than a few certified copies of issued patents. In Bischoff v. Wethered, 76 U. S. 812, 19 L. Ed. 829, the court said:

"It is undoubtedly the common practice of the United States Circuit Courts, in actions at law, on questions of priority of invention, where a patent under consideration is attempted to be invalidated by a prior patent, to take the evidence of experts as to the nature of the various mechanisms or manufactures described in the different patents produced, and as to the identity or diversity between them, and to submit all the evidence to the jury under general instructions as to the rules by which they are to consider the evidence. A case may sometimes be so clear that the court may feel no need of an expert to explain the terms of the art or the descriptions contained in the respective patents, and may therefore feel authorized to leave the question of identity to the jury under such general instruction as the nature of the docu-

ments seems to require. But in all such cases the question would still be treated as a question of fact for the jury and not as a question of law for the court. Such we think has been the prevailing rule in this country, and we see no sufficient reason for changing it."

The court points out that the practice is the same in England. It adds:

"The specifications of patents for inventions are documents of a peculiar kind. They profess to describe mechanisms and complicated machinery, chemical compositions, and other manufactured products, which have their existence in pais, outside of the documents themselves, and which are commonly described by terms of the art or mystery to which they respectively belong: and these descriptions and terms of art often require peculiar knowledge and education to understand them aright, and slight verbal variations, scarcely noticeable to a common reader, would be detected by an expert in the art as indicating an important variation in an invention. Indeed, the whole subject-matter of a patent is an embodied conception outside of the patent itself, which, to the eyes of those expert in the art, stands out in clear, distinct relief, while it is often unperceived or but dimly perceived, by the uninitiated. This outward embodiment of the terms contained in the patent is the thing invented, and is to be properly sought, like the explanation of all latent ambiguities arising from the description of external things, by evidence in pais."

In Keyes v. Grant, 118 U. S. 25, 6 Sup. Ct. 950, 30 L. Ed. 54, defendant set up a prior publication of a machine, and there appeared obvious differences between the two machines; experts differing upon the question whether those differences were material to the result. Verdict was directed for the defendant. The Supreme Court reversed, saying:

"Clearly it was not a matter of law that the specifications of the plaintiff's patent and the publication of Karsten, taken in connection with the drawings, described the same thing. It was a question of fact properly to be left for determination by the jury, under suitable instructions."

In Royer v. Schultz Belting Co., 135 U. S. 319, 10 Sup. Ct. 833, 34 L. Ed. 214, the court held that it was a question for the jury to pass upon whether the patented invention was of a primary character and the patent a "pioneer patent," and that it was also a question for them whether defendant's machine infringed its claims. In Coupe v. Royer, 155 U. S. 565, 15 Sup. Ct. 199, 39 L. Ed. 263, the court approved the statement quoted from Robinson on Patents:

"Where the defense denies that the invention used by defendant is identical with that included in the plaintiff's patent, the court defines the patented invention as indicated by the language of the claims. The jury judge whether the invention so defined covers the art or article employed by the defendant."

In the case at bar there was conflicting testimony as to both invention and infringement. The experts disputed as to how prior patents worked and as to whether they were practical. They disputed vigorously as to the meaning of the phrase "dipping-frame," used in the claim, whether it would convey to one skilled in the art the idea both of a pin-bar and of a wire mesh basket. They disputed as to whether a machine made under the patent in suit would or would not work. We are satisfied that under the authorities cited the trial judge would have committed error, had he decided these questions of validity and infringement, instead of sending them to the jury.

The court charged the jury at great length, going in detail over all the disputed points, calling their attention to all the separate defenses, referring to the prior patents, quoting from and explaining the patent, and laying down for them the general rules which are to be applied in determining the questions of invention and infringement. It is significant that to the charge no exception was taken. It must be therefore assumed that both sides were satisfied that, so far as it instructed the jury, it instructed them correctly. Defendant's assignments of error on this branch of the case deal only with refusals to charge some of his requests.

Before the summing up defendant submitted 36 separate written requests. These, as usual, were prepared to cover the entire controversy, and the court, in summing up, embodied many of them textually or substantially in the charge. The requests were not separately marked in the margin as "Charged" or "Refused," which is always a convenience for the appellate court. See our opinion in Star Co. v. Madden, 188 Fed. 910, filed this month. At the close of the charge the court, referring to the requests, said:

"I have endeavored to pass upon all the points which are referred to in them, and, if there is any point which I have not referred to at all, counsel will please call it to my attention, and I will charge it. I am not prepared to charge anything in any particular language, and I decline to charge as requested in the requests, other than as I have already charged in this case."

Counsel for defendant thereupon undertook to read each separate request and to ask for a ruling upon it. This the court refused to permit, but allowed counsel to note an exception to his refusal to charge each separate request. This was quite sufficient. It would have been a waste of time to read them all over again.

[3] The assignments of error do not include all the requests, and the argument here does not cover all the refusals which were assigned as error. It will be sufficient to refer only to those which were made the subject of argument.

Request No. I:

"The evidence shows that Smith machines, used at defendant's factory, contained the devices shown in the Smith patents numbered 901,749 and 905,-472, and are in accordance with the drawings and specifications set forth therein."

Defendant was not entitled to this request as phrased, because there was some evidence to show that the entire device shown in the two Smith patents was not found in the machine used in the Heide factory.

Request No. II:

"The issuance of patents numbered 901,749 and 905,472 to Myron A. Smith, creates a prima facie presumption of patentable difference between the device shown in the plaintiff's patent in suit and the Smith machines used in the defendant's factory."

This request is dependent on No. I, and falls with it.

Request No. IV:

"The plaintiff's patent in suit must be construed in reference to the prior art, and in this case is limited to the construction shown and set forth in the drawings and specifications of the patent."

Request No. V:

"Claim 2 of the patent in suit is limited to a construction showing a basket with pockets and a finger which constitutes two sides of said pockets and the relatively movable means for rearranging coating, substantially the same as the flipper or finger shown in the drawings and specifications in the patent in suit, and operating substantially in the same manner as is explained by the specification of the patent in suit."

The fifth is but an amplification of the fourth request. The court charged the jury in general terms:

"That claim No. 2 of the patent must be construed with reference to the language preceding it in the specifications and with reference as to the drawings and is limited by the drawings and specifications."

This was all, possibly more than, defendant was entitled to. Certainly the evidence as to the meaning of words used in the art was too conflicting to warrant a charge that the claim of the patent covered only the particular form of meshed basket dipping-frame which the drawings showed.

The sixth request referred to a device known as Exhibit D, which will be discussed later.

The seventh request asked an instruction that plaintiff could not have a claim against defendant under a later patent issued to him, which was not in suit. The charge most clearly told the jury that they were concerned only with an alleged infringement of claim 2 of the patent in suit. It was not error to refuse this additional instruction.

The eighth and ninth requests called for specific instructions, as to practical commercial results of operating various machines, as to which the jury had been sufficiently instructed in the general charge.

It is not necessary to go over the remaining requests in detail, because they were evidently so constructed as to dispose of the entire controversy by direction of the court, while apparently submitting it to the jury. The careful and exhaustive charge, which told them what the questions were and where they should look to find answers to them, was quite sufficient. Precise instructions on minute points would have taken away from their consideration the very questions which in a common-law case should be submitted to them.

Request No. 16, as to commercial use of a prior patent, was substantially covered by the charge; and the same is true of requests Nos. 33 and 34.

At the outset of the trial plaintiff offered in evidence a device which he said was made under his patent, and which he used in coating candies. Its appearance differed from the drawings of the patent and rather resembled that of defendant's device. It was admitted, over exception, as Exhibit D. We think that at the time it was offered it had not been sufficiently proved to be an embodiment of the device of the patent; but the question whether it was or was not covered by the patent was eventually left to the jury, and they found that it was so covered. This gave them the burden of determining whether two different machines, viz., Exhibit D and defendant's machine, both infringed the patent, when they should have been troubled only with the question whether or not defendant's machine infringed. But we do not

think it was error to allow them thus to classify Exhibit D, and, since it has been found to embody the device of the patent, any error in originally admitting it is cured. The sixth request asked an instruction that the device of Exhibit D is not shown in the patent in suit. Such an instruction was not justified by the testimony, which was in conflict as to the scope of the patent.

There are a number of exceptions to the admission of testimony; but we do not find any instance of reversible error.

[4] We have, then, a patent suit on the common-law side of the court, where there is much conflicting testimony, and where the case has been given to the jury with sufficiently full and proper instructions. The Supreme Court said in Tucker v. Spalding, 13 Wall. 455, 20 L. Ed. 515:

"Whatever may be our personal opinions as to the fitness of a jury as a tribunal to determine the diversity or identity in principle of two mechanical instruments, it cannot be questioned that when the plaintiff, in the exercise of the option which the law gives him, brings his suit in the law in preference to the equity side of the court, that question must be submitted to the jury, if there is so much resemblance as raises the question at all."

In such a case, where the jury has decided the questions of invention and infringement in one way, and no error is found in the conduct of the trial, it is not for us to set aside their verdict merely because, if the same questions were submitted to us as triers of the facts upon the same record, we might have reached a different conclusion.

As to the question of damages, the jury were instructed that plaintiff could recover only such damages as he might prove as a consequence of failure to sell machines of his own to defendant through the intrusion on the market of infringing machines. He testified to the price at which he sold complete machines with the patented feature included, and that he did not sell the patented feature separately, except to persons who had already purchased a complete machine. He testified what it cost to make the patented feature and the complete machine. The jury were told that they could not give more than nominal damages, unless they were satisfied that defendant, if he had not bought the infringing Smith machine, could have bought plaintiff's machines. There was evidence from which they might fairly have reached such a conclusion, and the verdict does not exceed the amount which would naturally result from such a conclusion. We find no error in the charge on this branch of the case.

The judgment is affirmed.