### TRANSIT DEVELOPMENT CO. v. CHEATHAM ELECTRIC SWITCHING DEVICE CO.

### NASSAU ELECTRIC R. CO. v. SAME.

(Circuit Court of Appeals, Second Circuit. February 2, 1912.)

Nos. 164, 165.

1. APPEAL AND ERROR (§ 999*)—REVIEW—QUESTIONS OF FACT.

In the federal courts, questions of fact, which have been determined by the verdict of a jury, properly instructed, are not reviewable by the appellate court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3912–3921, 3923, 3924; Dec. Dig. § 999.*]

2. PATENTS (§ 276*)—ACTIONS AT LAW FOR INFRINGEMENT—QUESTIONS FOR JURY.

In an action at law for infringement, upon conflicting proof, it is a question for the jury to pass on whether the patented invention is of a primary character and the patent a pioneer patent.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 240, 432–434; Dec. Dig. § 276.*]

3. PATENTS (§ 274*)—ACTION FOR INFRINGEMENT—DAMAGES—PROOF OF DAMAGES.

To entitle the owner of a patent to recover damages from a user of infringing devices, he is not required to prove that, if defendant had not used such devices, he would have purchased those made under the patent.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 419–421; Dec. Dig. § 274.*]

4. PATENTS (§ 276*)—VALIDITY AND INFRINGEMENT—RAILWAY ELECTRIC SWITCH.

The charge of the court, in an action to recover damages for infringement of Cheatham patents, No. 612,702 and No. 917,541, for electric railway switches, resulting in a verdict finding validity and infringement, considered, and *held* not erroneous.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 240, 432–434; Dec. Dig. § 276.*]

In Error to the Circuit Court of the United States for the Eastern District of New York.

Actions at law by the Cheatham Electric Switching Device Company against the Transit Development Company and the Nassau Elec-

tric Railroad Company, respectively. Judgments for plaintiff, and defendants bring error. Affirmed.

See, also, 190 Fed. 202.

These two actions come before this court for review upon writs of error to the Circuit Court. The actions were tried together as one action in the trial court, and assignments of error have been argued together in this court. A single opinion will therefore dispose of both causes. The actions are each for infringement of two patents. The first was issued October 18, 1898, to Robert V. Cheatham for an automatical electrically controlled railway switch. The single claim involved reads as follows:

"3. In an electrically controlled switch-operating mechanism, the combination with a trolley wire, and trolley wheel, and a double solenoid having a core armature connected with the switch point-rail, of parallel contact strips supported at opposite sides of the trolley wire and having upward inclined ends, one of said strips being integral throughout and the other being divided into three sections, an electro-magnet having a spring armature and two contact plates for said armature, the winding of said electro-magnet being connected with the trolley wire and with the integral contact strip, a wire connecting the spring armature with the middle section of the divided contact strip, and wires connecting the contact plates of said spring armature with the windings of the double solenoid, substantially as described."

The second patent, No. 917,541, was issued to the same inventor April 6, 1909, for an electric switching device for railways. Two claims involved read:

"1. In a device of the class described a trolley pan having parallel flat strips with flat bottoms inclined at an angle to the horizontal and conducting bars secured to said inclined lower surfaces.

"2. In a device of the class described a trolley pan having parallel flat strips with inclined lower surfaces, conducting bars, insulated from each other and secured to said lower surfaces, and means for throwing a switch point connected with some of said conducting bars."

Kiddle & Wendell and W. C. Margeson (Alfred W. Kiddle and Charles A. Wendell, of counsel), for plaintiffs in error.

O. E. Edwards, Jr., and Hamilton R. Squier, for defendant in error.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts as above). The amount of the verdict was $551.44 against the Transit Company, being damages for eight infringing devices; that against the Nassau Company was $413.58, being damages for six infringing devices, which six devices were part of the eight included in the Transit action. The plaintiff is not entitled to double damages for the same infringement, but it is not necessary to discuss this part of the case, because any error of that sort in the verdicts was cured by the court's direction at the foot of the judgment, instructing the clerk not to issue execution against the Nassau Company if the judgment against the Transit Company were collected.

[1] There was such a conflict of testimony (including the experts') touching the main issues as made it the duty of the trial judge to submit to the jury the two fundamental questions of fact: "Was there invention?" "Was there infringement?" As we pointed out recently in Heide v. Panoulias, 188 Fed. 915, 110 C. C. A. 656, when questions of fact are disposed of by the trier of the facts in an equity suit, his decision may be reviewed on appeal. When disposed of by the verdict of a jury, properly instructed, its decisions on those points are not re-

viewable by the appellate court. The case at bar is like that considered by the Supreme Court in Bischoff v. Wethered, 76 U. S. 812, 19 L. Ed. 829, where the record contained "much more than a few certified copies of issued patents," which the court would be entirely competent to construe for itself. The only question, therefore, for this court to determine, touching invention and infringement, is whether there was error in the instructions given to the jury or in some refusal to charge as requested by defendants.

The colloquial charge was a long one, and to one part of it only was there an exception reserved. This exception reads:

"To so much of the charge which seems to indicate that Cheatham's first patent covered the mechanism broadly, whereby the motorman could leave the current off or on to throw the switch point, without regard to the mechanism by which this result is accomplished, and not limited to the devices as shown and described in claim 3."

The passages in the charge apparently referred to are found at folios 1,380 and 1,381, where the court told the jury it was for them to decide whether or not Cheatham "had an idea which was entirely new as to accomplishing this thing in this way." Immediately thereafter, in referring to this suggested "new idea," the judge spoke of it as "taking the current from one trolley wheel, so as to throw the switch if power were used, or to leave the switch alone, or throw it back, if no power were used." Standing alone and apart from anything else in the charge this statement might possibly be understood as intimating that the invention consisted in a method of manipulating the flow of the current rather than in the combination of mechanical elements by which such manipulation was accomplished. But it should be noted that in endeavoring to make the situation plain to the jury the court did not use these words "method" and "combination" in the technical sense familiar to patent lawyers and experts, and of which a jury of laymen would have no appreciation. He used the words as they are understood in common parlance. Moreover, whatever there might have been which was misleading in the words above quoted, it was promptly and fully corrected. When defendant's counsel asked for an exception in the language above quoted, the court said:

"Of course, I do not intend to charge that he could do that, except by any particular device, or the device with an equivalent structure. I am not claiming that he would do it by an entirely different method. The jury will understand that, if I have used general language in that way, wherever I have referred to Mr. Cheatham having a method for doing this, I have meant a method as described in claim 3 of this patent."

Subsequently, at the request of defendants, the court charged that:

"The words 'substantially as described,' as set forth in claim 3 of patent 612.702, are words of limitation, and these words limit the elements of the claim to elements in combination having the form and constructed and operating as shown and described in the specifications."

This was the last instruction to the jury on this whole subject of methods and combinations. It is so plain and specific that it must be assumed that they understood it, and, since it states the law of the case accurately, defendant can take nothing by reason of its exception

to the less carefully expressed language of the colloquial charge. This disposes of assignments of error 5, 6c, and 6d.

Error is assigned to refusals to instruct the jury that defendant's devices did not infringe claim 3 of the first patent, because neither of defendants' contact strips has upturned ends to deflect the trolley wheel. That involved a question of fact, upon which there was conflicting testimony. The trial court properly left it to the jury to determine, and to its instructions to them on the subject of equivalents no exception was reserved. The jury's conclusion on the conflicting evidence is final. This disposes of assignments 6a and 6b.

Assignment of error 6g is to a refusal to charge that, in view of the state of the art, claim 3 cannot be construed to cover defendants' devices. This may be similarly disposed of. There was conflicting evidence, and the question was sent to the jury under instructions not excepted to.

A like disposition must, for similar reasons, be made of assignment 6h, the refusal of a request to charge that claims 1 and 2 of patent 917,541 cannot be construed to cover defendant's devices.

Assignment 6e is to refusal to charge that:

"Neither of the two patents sued upon is a pioneer or primary invention, and hence is not entitled broadly to the doctrine of equivalents, but is only entitled to a narrow range of equivalents."

The court so charged as to the second patent, but refused so to charge as to the first one. In the course of the colloquial charge the court did not instruct the jury that the plaintiff was a "pioneer," as defendants upon the argument contended that he did. What the court said was that:

"If Mr. Cheatham had an idea which was entirely new as to accomplishing this thing in this way, then the language of the patent would give him a pioneer patent."

[2] The question of pioneership depends, of course, upon the prior state of the art and the skill of the calling, matters of fact about which there was a conflict of testimony; so the court left it to the jury to decide whether or not the first patent was a pioneer. He gave them proper instructions on that point, which were not excepted to. Their conclusion on such point is final. Upon conflicting proof it is a question for the jury to pass upon whether a patented invention is of a primary character and the patent a "pioneer patent." Royer v. Schultz Belting Company, 135 U. S. 319, 10 Sup. Ct. 833, 34 L. Ed. 214.

[3] Assignment 6f is to a refusal to charge that:

"Inasmuch as plaintiff has not proven that it would have received any order for its switching devices from either of the defendants, it cannot recover."

We think this request was unsound. It would require plaintiff specifically to prove what in the nature of things can only be established by inference. When a person buys and installs an infringing device, it is to be assumed he does so because he finds it desirable or necessary to do so; and the natural inference would be that, if he had not got the infringing device from the infringing manufacturer, he would have

got the equivalent device of the patent from some one licensed to make it, or if no one is so licensed, and the owner of the patent himself manufactures, then from such owner.

No exception was reserved to those parts of the charge which stated the correlations of the two defendant companies and specified the unit of damages per device. There is nothing, therefore, before us to which the argument as to possible error in calculating such unit can be advanced, and we cannot look into it. The only request as to the measure of damages was that the jury be charged that:

"Plaintiff cannot in any event recover a verdict for the use of the six machines against the defendant Nassau Company, and eight machines against the Transit Company, but can at most recover a verdict for eight switches in both cases."

This was charged.

[4] By exception to a refusal to dismiss the complaint at the close of the case defendants are entitled to present here (assignment 4) the grounds stated upon such motion, viz., that there was no proof of infringement by defendants or either of them. This assignment, however, is without merit. It appears by stipulation that the Nassau Company was a *user* of six of the infringing switches. From the stipulation, taken in connection with the agreement between the defendants and other companies, the jury were entitled to find that those six switches were bought by the Nassau Company from the Transit Company, which was therefore a *seller* of them. As to the other two switches which the Transit Company bought, we have not been able to find specific evidence of their subsequent sale or use. But the court's attention was not called, either by motion or request, to the contention that there was some defect of proof as to these two, and the language of defendants' request last above quoted would seem to indicate that it was conceded that there was sufficient proof for the jury to consider as to whether they also had been sold or used. Under these circumstances we can find no error in the verdict which includes these in the assessment of damages against the Transit Company.

There has been no argument of any of the errors assigned to the admission or exclusion of testimony, so these need not be considered.

The judgment is affirmed, with costs.