CHEATHAM ELECTRIC SWITCHING DEVICE CO. v. TRANSIT DEVELOPMENT CO. et al.

(District Court, E. D. New York. July 1, 1912.)

1. PATENTS (§ 326*)—SUITS FOR INFRINGEMENT—VIOLATION OF INJUNCTION.

Defendants required to pay for the expense and trouble caused to complainant in bringing proceedings for contempt for violation of an injunction against infringement of a patent for an electric switch, where, although they had disconnected and ceased to use the infringing devices. they had not been removed.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 613–619; Dec. Dig. § 326.*]

2. PATENTS (§ 276*)—SUIT FOR INFRINGEMENT—EVIDENCE—EFFECT OF PRIOR ADJUDICATION.

The verdict of a jury, in an action at law awarding damages for the infringement of a patent, while it establishes the validity of the patent as between the parties, does not disclose the construction placed upon it. by the jury or what claims in suit were held valid, and does not therefore afford a basis upon which a court of equity in a subsequent suit between the same parties can determine the question of infringement by a different device, without further evidence.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 240, 432–434; Dec. Dig. § 276.*]

3. PATENTS (§ 314*)—SUIT FOR INFRINGEMENT—TAKING OF TESTIMONY.

A motion to require the testimony to be taken orally in court on the trial in an equity suit for infringement of a patent denied.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 550–553; Dec. Dig. § 314.*]

In Equity. Suit by the Cheatham Electric Switching Device Company against the Transit Development Company, Nassau Electric Railroad Company, and American Automatic Switch Company. On various. motions by complainant.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

O. Ellery Edwards, Jr., of New York City, for complainant.
Kiddle & Wendell, of New York City, for defendants.

CHATFIELD, District Judge. The complainant has brought on various motions in the present action, which have been argued together, but which must be considered separately.

The present action is that in which the American Automatic Switch Company was released as a party defendant, upon the determination of a plea interposed by it (Cheatham Electric Switching Device Co. v. Transit Development Co. et al. [C. C.] 191 Fed. 727), and in which a temporary injunction was granted against the use of the device referred to throughout these papers as Type 14, which had been the basis of a preceding action brought by this complainant against the two defendants, the Transit Development Company and the Nassau Electric Railroad Company, with reference to the use and maintenance of eight of these Type 14 devices, under claims 1 and 2 of patent No. 917,541, and claim 3 of patent No. 612,702, owned by the complainant.

The former action as to these eight devices was tried before a jury and resulted in a verdict for the complainant, which was affirmed upon appeal, 194 Fed. 963. For the present, therefore, it may be considered as settled that a device of the sort known as Type 14 has been adjudicated to be an infringement of the specified claims of the Cheatham patents above named, and that the defendants in the present action have been enjoined from maintaining or using, pending final hearing, any structures embodying the inventions in these claims of these patents, and from infringing them in any way whatever.

[1] The first motion is an application to punish these defendants for contempt for a violation of this last temporary injunction. The complainant has pointed out certain places in the city of Brooklyn, at which the Transit Development Company maintained or allowed to remain, upon the tracks of the Nassau Electric Railroad Company, the so-called trolley pan or framework attached to the trolley wire, which, when connected, was used as a part of the device Type 14, and which was the subject of the action at law.

Upon the argument of the motion it was admitted that the trolley pans had not been removed, but their use or active maintenance was denied, and a willingness to take the trolley pans from the wires was expressed; the delay being apparently not for any improper purpose, nor for intended defiance of the court's order.

Before this motion was finally argued and submitted, the complainant called the attention of the court and of the defendants to a maintenance of two more similar Type 14 devices, which were overlooked by the defendants previously. Before the final submission, all of the Type 14 contactors had been actually removed from the lines of the Nassau Electric Railroad Company. But on this final argument further affidavits were presented, to the effect that the defendant the Transit Development Company was maintaining and repairing switches on tracks of two other railroads forming a part of the Brooklyn Rapid Transit system; and that these devices and

their maintenance by one of the defendants to this action was in violation of the provisions of the injunction which, while expressed in language applicable to both defendants, nevertheless would cover an infringement by either one alone. The defendant the Transit Development Company thereupon, and within seven days after the argument of the motion, removed from the wires of all of the companies pointed out or found in the Brooklyn Rapid Transit system, every trolley pan or contactor of the style known as Type 14, and they therefore ask that they be relieved from any punishment for the alleged unintentional, and immaterial violation of the strict terms of the injunction order.

It would seem that the delay in removing the original trolley pans, in the place of merely disconnecting the wires operating the same, was not such a contempt as should be punished, beyond the expense of ascertaining whether the defendants had complied with the orders of the court. And in the same way, the failure on the part of one defendant to avoid the use of similar structures upon the other systems, cannot be justified, but is nevertheless somewhat excusable, inasmuch as it was remedied as soon as pointed out.

The complainant, however, having been put to the expense of bringing the matter to the attention of the defendants, and while admitting their good faith, being compelled to bring, at the cost of its own time and effort, the defendants to a realization of the facts, should not be left entirely without a remedy. The legal expense connected with the first application has been stated under oath to be $75, and the witness, Cheatham was shown by the affidavits to have devoted considerable time to an inspection of the devices necessary to making said motion.

It would seem that a denial of the motion to punish the defendants for contempt, upon the payment of $50 by the Nassau Electric Railroad Company, and $100 by the Transit Development Company, to the complainant, would be equitable under the circumstances.

The second motion is an application by the complainant to punish the defendants for the making, using, and selling of certain devices known as "Type 15" switch.

The third motion, which can be considered therewith, was for an injunction, pending the trial of the action, against further construction, use, or sale of this American Automatic Switch "Type 15."

The fourth motion, which can also be considered with Nos. 2 and 3, is for an order to compel the defendants to remove, from tracks and wires within their jurisdiction, all the switch devices known as either 14 or 15, and which are maintained or used by either of the defendants.

As to this last motion, with respect to Type 14, the affidavits show that compliance has now been had; but, if not, the complainant would be entitled to have structures of that sort removed forthwith.

[2] As to Type 15, the entire question depends upon the effect of the verdict in the action at law above referred to, with relation to claims 1 and 2 of the last Cheatham patent, and claim 3 of the earlier

patent, and the evidence presented as to the alleged infringement by the Type 15 switch of these claims.

An examination of the claims and of the record in the earlier suit, with the charge to the jury and the opinion of the Court of Appeals, makes it plain that claim 3 of patent No. 612,702 gave a patent for a structure, so arranged as to accomplish the desired object by a device never before made in that form; while claims 1 and 2 of patent No. 917,541 cover an improved device for the same general purpose, and to a certain extent using equivalents for the elements of the device shown in the other patent, but yet having substantial differences in the arrangement of parts, so as to perform different functions and produce a different combination. That is, claims 1 and 2 of the later patent prove the earlier patent to have been that of a combination or of a device to accomplish a particular object in a particular way, rather than the patent for a method or process of controlling a switch point by means of an electric current, to be used by the motorman, and as operated by any structure producing that result.

The questions submitted to the jury were not divided into specific queries, nor did the verdict of the jury specify which of the claims was valid, or whether both were valid, nor which of the claims was infringed, nor whether both were infringed.

The verdict of the jury renders res adjudicata as to the complainant and the defendants or their successors (it happens that they are the same parties in this action) the precise question only which was submitted to the jury, namely, whether or not, upon any of the grounds upon which a verdict could depend, the complainant had sustained the burden of proof. Russell v. Place, 94 U. S. 606, 24 L. Ed. 214.

It must follow therefore that if the same defendants were using, making, or maintaining the device Type 14, and any of the present motions should be made upon facts not denied or not successfully disputed by the defendants, the motion should be granted. It would be apparent that, under those circumstances, a determination of the same issue between the same parties, and with relation to the same subject-matter, or identically similar subject-matter, would have to be followed by the same result, unless newly discovered evidence, or some mistake of fact, appealed to the discretion of the court, and a new trial was granted if that could still be done. In an equity action the court would proceed on the theory that the adjudication in the action at law was valid, and would not attack it collaterally as to the claims therein named.

But Type 15 provides a different object or device as the subject-matter of the present action. The complainant contends that, for the purposes of all these motions, the court can decide that Type 15 is operated, maintained, and constructed by the use of mechanical parts, which are merely the equivalents and are identical with the parts in Type 14; and that this court can, by an inspection of the structure alone, determine not only that a temporary injunction should issue, but, substantially, that judgment absolute should be given without the taking of testimony other than that which is presented upon this mo-

tion, whether the present action be brought before the court or before a jury.

But this method of proceeding does not appeal to the court. An action at law to recover damages for an infringement of patent is allowed by statute. It is apparent, from 'the course of the trial of such actions as have been tried by a jury, that the verdict of a jury, while satisfactory in many ways, does not give the court the foundation for an intelligent statement of its interpretation of the letters patent which is afforded by a trial under the equity rules. But assuming that the action at law and the verdict of a jury has established the rights to an adjudication, or is equivalent to establishing the doctrine of stare decisis, so far as the present validity of the patent is concerned, upon the claims tested, nevertheless, to ask a court of equity to treat the verdict of the jury as equivalent, for all purposes, to the decision of a court of equity, and to, in effect, give final judgment, not only upon an interpretation of the patent, but upon an interpretation of what particular issue was picked out and found by the jury in the complainant's favor, as a sufficient basis for its verdict, is not, in the opinion of this court, a safe method of procedure. The quickest way to save time would have been to bring this action at law, and to bring the case on for trial immediately before a jury, if the trial of the first action in that way has proven so satisfactory.

All of these motions, therefore, resolve themselves into a simple question, as to whether this court of equity is satisfied, upon a prima facie determination of validity of some claims of one or the other or both of the Cheatham patents, to hold that the present form of device, that is, Type 15, is such a plain infringement that none of the defenses which may be interposed under the answer give any possible hope of success.

Under the present doctrine of the law with relation to preliminary injunctions, and considering the fact that the damages in the action at law were computed upon royalties, so that, if the complainant herein eventually prevails, he will be entitled only to his damages caused by the necessity of bringing the action, and to royalties for the use of the alleged infringing device, it does not seem to the court that any preliminary injunction should issue.

But as validity might be presumed, and as the question of infringement could perhaps be disposed of now, the court will, from time to time, as a condition for refusing to grant the injunction, if the complainant so desires, direct that the defendants give security, at the rate of the probable costs and damages on each device as allowed in the former action, for all devices of Type 15 installed up to the time of the trial.

[3] The fifth motion is an application to have the court apply a rule now existing in the Southern district of New York, under which the testimony is to be taken orally in court on the trial. In a case brought by the National Equipment Company, this practice has been approved by a decision rendered upon appeal, March 2, 1912, in the Circuit Court of Appeals for the Second Circuit. It has always been

assumed in this district, even though the rule has not been put in application in any reported case, that the District Court has power, under the sixty-seventh rule in equity, to permit one party to cause the whole of the testimony to be presented orally in court upon final hearing. If the court has the power to permit this, it has always been considered that if the court does permit it, and so orders, the other parties to the suit must obey. The Circuit Court of Appeals has upheld the idea that has been prevalent in this district, and this court feels that there is no reason why any patent case might not be heard in open court, if the engagements of the court permit this to be done. But whether it would prove advisable to sit in continuous sessions, and without revision of testimony, does not answer itself. Under the present condition of the calendars and the work of this court, it would not be advisable to establish this practice, and the court sees no reason to enter into a discussion as to the advantages or disadvantages that might follow that matter. The affidavits show, if the complainant be correct in his ideas, that the record will be short, and neither the question of expense nor saving of time seems to be of controlling importance.

It would seem therefore that the motion to have the witnesses heard at final hearing is unnecessary, and that the court need not establish a practice in this case which might appeal to it in a case where the ordinary course of procedure would cause hardship.