### CHEATHAM ELECTRIC SWITCHING DEVICE CO. v. BROOKLYN RAPID TRANSIT CO. et al.

(Circuit Court of Appeals, Second Circuit. November 14, 1916.)

No. 87.

1. PATENTS ⬾283(2)—SUIT FOR INFRINGEMENT—DEFENSES.
   The owner of a patent, who has recovered a judgment at law for its infringement, cannot thereafter maintain a suit in equity against users with respect to the same devices included in the judgment, and the use of which has ceased.
   [Ed. Note.—For other cases, see Patents, Dec. Dig. ⬾283(2).]

2. PATENTS ⬾277—SUIT FOR INFRINGEMENT—EFFECT OF PRIOR ADJUDICATION.
   That a jury in an action at law found that a patent was of a primary character, and that their verdict was affirmed by an appellate court, does not fix the status of the patent as a pioneer in subsequent litigation between different parties.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. § 435; Dec. Dig. ⬾277.]

3. PATENTS ⬾178—EQUIVALENTS.
   The most generous equivalents of the elements of a patented device can never go beyond the invention revealed by the drawings and specifications, and assured by the claims.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. § 436; Dec. Dig. ⬾178.]

4. PATENTS ⬾112(3)—SUIT FOR INFRINGEMENT—ESTOPPEL.
   A patentee, who subsequently applied for another patent, which in interference proceedings was awarded to another, is estopped to deny that there is a patentable difference between the device of such patent and that of his prior patent.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. § 164; Dec. Dig. ⬾112(3).]

5. PATENTS ⬾237—EVIDENCE OF INFRINGEMENT—SIMILARITY OF RESULTS ATTAINED.
   Similarity of results accomplished by two devices is not per se even evidence of equivalence or infringement.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 374, 375; Dec. Dig. ⬾237.]

---

⬾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. PATENTS ⊂⊃328—INFRINGEMENT—ELECTRIC RAILWAY SWITCH.
    The Cheatham patent, No. 612,702, for an electric railway switch, *held* not infringed.

7. WORDS AND PHRASES—"SPRING ARMATURE."
    By the term "electro-magnet having a spring armature" is meant that, according to the strength of the current energizing the magnet, the switch-actuating current flows through a contact touching the armature, by force of a spring, or through another contact by force of the magnet's attraction overcoming the spring.

8. WORDS AND PHRASES—"PARALLEL CONTACT STRIPS."
    The term "parallel contact strips," as used in describing a track switch, electrically actuated and used with and for trolley cars, means that the switch-actuating current flows through a circuit always completed by the passage of the trolley wheel along the "contact strips," which together bridge the trolley wire and prevent the trolley wheel touching the same while passing the length of the strips.

Appeal from the District Court of the United States for the Eastern District of New York.

Suit in equity by the Cheatham Electric Switching Device Company against the Brooklyn Rapid Transit Company and others. Decree for defendants, and complainant appeals. Affirmed.

For opinion below, see 229 Fed. 165. See, also, 227 Fed. 613.

Appeal from final decree dismissing bill in equity on patents 612,-702 (claim 3) and 917,541 (claims 1 and 2), entered in the District Court for the Eastern District of New York.

O. Ellery Edwards, Jr., of New York City, for appellant.

Thomas J. Johnston, of New York City, for appellees.

Before COXE, ROGERS, and HOUGH, Circuit Judges.

HOUGH, Circuit Judge. These patents were the subject of decisions in this court in Transit, etc., Co. v. Cheatham Electric, etc., Co., 194 Fed. 963, 114 C. C. A. 599, and Cheatham Electric, etc., Co. v. Transit, etc., Co., 209 Fed. 229, 126 C. C. A. 297. In the case first cited the claims there and here in suit are set forth. The earlier patent expired shortly after this action began.

The patented device is for a track switch, electrically actuated and used with and for "trolley cars." Plaintiff first sued at law, and recovered damages for the use of a specified number of infringing switches of a style or design known herein as Type 14; it then filed a bill to reach certain other devices, similarly infringing, acquired or used after verdict. These are the suits above referred to as having been before this court.

The defendants here are the same as in the prior cases, plus several other "surface car" companies operating on Long Island, and comprised within what is commonly known as the Brooklyn Rapid Transit system. It was stipulated that certain of the defendants had within six years before suit used the Type 14 switch, but had discontinued the same, and that all the defendants had within the period named used another switch, called herein Type 15. Patent 612,702 is the only one said to be infringed by this last type of switch.

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Litigation over this patent, between the parties here, or some of them, has been long and acrimonious, with the result that discussion had gone much beyond what we regard as the legitimate limits of this cause. Our decision will be confined to two points: (1) Is the plaintiff entitled in this case to any recovery in respect of Type 14? (2) Does Type 15 infringe?

[1] In respect of the first inquiry, the court below found as a fact that the Type 14 devices ascertained or admitted herein as having been used by any defendant—

"had all been removed from the defendant's system prior to the time of the trial. They are the same as the switches for which the Transit Development Company has been held responsible in the preceding suit." 229 Fed. 167.

There is no reason to disagree with this conclusion, and plaintiff, having had judgment or decree in respect of the switches shown, must look to such judgment for satisfaction.

Type 15 switch is the embodiment of a recent patent to one Collins (No. 1,152,791); wherefore plaintiff contends: (1) That the date of invention of Cheatham (its patentee) is earlier than that of Collins; and (2) Cheatham's was a "pioneer" invention, entitled to a range of equivalents wide enough to cover Type 15, despite many dissimilarities in structure.

It is urged that both these facts (and they are facts as distinct from arguments) are shown by the record of the case before us in 194 Fed. 963, 114 C. C. A. 599, wherein Cheatham swore to his earlier inventive date, and this court is said to have found or held that patent 612,702 was a pioneer. The record in that case was offered in evidence "in bulk" at the trial herein, and rejected. Such rejection was entirely right as to Cheatham's alleged testimony respecting his date of invention, because the offer was not made on the ground of the witness' death or absence. Ecaubert v. Appleton (C. C.) 67 Fed. 924.

[2] Nor did that record prove, nor tend to show, that Cheatham's patent must be viewed as pioneer by the trial court, for to that extent does the contention go. In that action at law, it was quite properly left to the jury to decide whether the invention was of that primary character to which the convenient word "pioneer" had come to be applied. We may assume that the jury so found, and that their verdict became the law of the patent as between the parties to that suit. We so held in the subsequent equity action. 209 Fed. 229, 126 C. C. A. 297. But that such verdict, or the judgment entered thereupon, became an adjudication of status, decisive of the primary nature of the invention, and binding on all subsequent triers of facts in suits between different parties, is a proposition not to be sustained. We distinctly overruled it in Fountain, etc., Co. v. Steel City, etc., Co., 223 Fed. 544, 139 C. C. A. 134.

[3] Before it is necessary to consider whether, on the competent and material evidence in this record, it is shown that Cheatham's invention is primary, or whether, upon the widest range of equivalents, infringement can be discovered in the use of Type 15, the question arises whether Cheatham is not estopped to deny that Collins' is a

different device, resting on a different idea, and embodying an inventive thought wholly separate from that revealed by the patent in suit. It is obvious that the most generous equivalents can never go beyond the invention revealed by drawings and specifications and assured by claims. Groth v. International, etc., Co., 61 Fed. 284, 9 C. C. A. 507.

[4] It appears that Cheatham filed an application for a patent, substantially when Collins did, in 1911; an interference resulted, and Collins won, receiving his patent above referred to. Cheatham's verified application is in evidence. It is not doubted that Cheatham described substantially, if not exactly, what Collins did, and therefore in 1911 asserted in effect that there was a patentable difference between what was already covered by No. 612,702 and what he asked for, but found Collins entitled to. No range of equivalents can overcome a patentable difference; nor is the truth of this statement impaired by the fact that a patentable improvement may in use be applicable only to a major device covered by an earlier patent.

It is conclusively presumed that no one knows as thoroughly as does the inventor what are the limits of his own inventive thought; most of the doctrine of claims rests on this presumption. It follows that, when Cheatham applied for (in substance) a patent on Type 15 switch, he thereby affirmed that he did not think or believe that what he wished to patent was covered by his own or any other existing grant of monopoly. The conclusion is that what Cheatham declared to be patentable as against himself (inter alios) is to be taken as not embraced in No. 612,702, and by his own assertion, and therefore does not infringe. This is the doctrine of McClain v. Ortmayer, 141 U. S. 419, 12 Sup. Ct. 76, 35 L. Ed. 800, and singularly applicable to the facts at bar.

Since it may be contended that Type 15, and Collins' device generally, though sufficiently novel to warrant patenting, nevertheless embraces matters protected by the patent in suit, and must therefore pay tribute, we proceed to ascertain what this record shows in respect of the nature of the patent under consideration. In the decision below, and the several other opinions there referred to, the arrangements and operation of Cheatham's switch are fully set forth. In our judgment the invention is very far from meriting such descriptions as were given of pioneer devices in Wagner, etc., Co. v. Wyckoff et al., 151 Fed. 589, 81 C. C. A. 129, and Autopiano Co. v. Amphion, etc., Co., 186 Fed. 163, 108 C. C. A. 291.

[5-8] The only claim alleged as applicable to Type 15, is No. 3, of 612,702. See 194 Fed. 964, 114 C. C. A. 599. That claim is for a combination of old and well-known parts, producing an effect which, of course, could not be patented, and as to which similarity of result is not (per se) even evidence of equivalence or infringement. Burr v. Duryee, 1 Wall. (68 U. S.) 572, 17 L. Ed. 650; Westinghouse v. Boyden, etc., Co., 170 U. S. 537, 18 Sup. Ct. 707, 42 L. Ed. 1136. One of the enumerated elements of that combination is an "electro-magnet having a spring armature," which means that, according to the strength of the current energizing the magnet, the switch-actuating current flows through a contact touching the armature by force of a spring,

or through another contact by force of the magnet's attraction overcoming the spring. Another element is described as "parallel contact strips," a phrase meaning that the switch-actuating current flows through a circuit always completed by the passage of the trolley wheel along the "contact strips," which together bridge the trolley wire and prevent the trolley wheel touching the same while passing the length of the said strips. Whenever the trolley wheel is not present to complete the circuit, there is no complete path (in Cheatham's device) for the switch-actuating current.

These elements are vital to the claim in suit. Type 15 switch uses neither of them, and would not operate if they were present.

We need not go further, for we find it difficult to imagine a patent so primary as to entitle the inventor to an equivalency such as is here demanded; but as this patent is a narrow one, both by the very specific language of its own claim and by its nature (in view of the prior art), we are of opinion that Type 15 does not infringe, and uphold that finding of the court below in favor of those defendants against whom plaintiff heretofore recovered judgment at law because of their use of Type 14. No judgment or decree, based on the use of an infringing article, can ever prevent the same defendant from using a noninfringing one. Such judgment or decree may limit available defenses, but it can do no more.

Let the decree be affirmed, with costs.