Appeal of **CHEATHAM ELECTRIC SWITCHING DEVICE CO.**    Docket No. 528.

The evidence in this appeal is not sufficient to enable the Board to determine the value of the patents for invested capital and depreciation purposes.

Submitted January 28, 1925; decided April 8, 1925.

*Elwood Hamilton, Esq.*, for the taxpayer.
*A. Calder Mackay, Esq.*, for the Commissioner.

Before GRAUPNER, LANSDON, LITTLETON, and SMITH.

This appeal involves a deficiency in income tax for the years 1919 and 1920, in the total amount of $1,504.78. The questions presented are:

(1) The value of certain patents paid in for stock in February, 1900, for invested capital purposes in 1919 and 1920;

(2) The value of certain patents at March 1, 1913, for the purpose of deductions for exhaustion in those years.

### FINDINGS OF FACT.

The taxpayer is a corporation organized under the laws of the State of Kentucky in February, 1900, for the purpose of developing and selling an automatic electric switch for use upon street railways. Its principal office is at Louisville, Kentucky.

On December 3, 1895, a patent, No. 550,868, was issued to R. V. Cheatham, covering an "Automatic Electric Switch for Railways," and on October 18, 1898, a further patent, No. 612,702, covering an "Automatic Electrically Controlled Railway Switch," was also granted. On February 15, 1900, Cheatham, in consideration of all of taxpayer's capital stock, consisting of preferred stock of the par value of $10,000, and common stock of the par value of $50,000, assigned these patents to taxpayer, "together with all property used in connection with the manufacture of said articles and all patterns used therefor," agreeing to assign to taxpayer all patents that might thereafter be granted him for the improvement or modification of patents Nos. 550,868 and 612,702. Subsequent patents were issued to Cheatham and assigned by him to taxpayer as follows:

No. 696,313 dated March 25, 1902,
No. 787,927 dated April 18, 1905,
No. 917,541 dated April 6, 1909,
No. 947,953 dated January 18, 1910.

The first patent of December 3, 1895, was a complete failure and of no value whatever. The patent of October 18, 1898, is claimed to have covered a basic principle, but the device manufactured thereunder was not a success from a practical or commercial standpoint, only a few such devices being sold. The patent of March 25, 1902, was obtained on an improvement to the device manufactured under the patent of October 18, 1898, and, while it made the device sal-

able, it also was not entirely successful. Accordingly, on April 18, 1905, another patent to further perfect the device was obtained by Cheatham and assigned to the taxpayer. At a later date still other modifications and improvements upon the device were found to be necessary in order to make it a commercial success and, on April 6, 1909, Cheatham obtained a patent upon a further improvement, which finally perfected the device. He also obtained another patent on January 18, 1910. This patent, however, possessed no value and was never used. The patents of 1902, 1905, and 1909 are not now claimed to have covered a basic principle, but only improvements upon the device made under the patent of 1898. By combining, however, the patents of 1902, 1905, and 1909, with the patent of 1898, the taxpayer was able to produce an automatic electric switch superior to any other automatic electric switch upon the market.

In the year 1901, taxpayer found itself financially unable to carry on the manufacture of the switch, and induced one J. Edgar Stewart to purchase one-half of its capital stock, 300 shares, from Cheatham for $645; Stewart agreeing at that time to lend the company money in an amount not to exceed $3,000.

The devices were manufactured for taxpayer by another company. The taxpayer possessed no plant, machinery, office furniture, or other tangible property. It did no advertising, but sold its devices entirely through salesmen. The perfected switch, as sold by taxpayer, was based upon a combination of the patents of 1898, 1902, 1905, and 1909. The patents of 1898, 1902, and 1905 had no value when standing alone, and were of value only when used in conjunction with the patent of 1909. The patent of 1909 likewise possessed no value except when combined with the former patents. Each patent expired 17 years from the date that it was issued.

Taxpayer's net earnings for the years included in the period October 1, 1901, to December 31, 1920, were as follows:

| | | | |
|---|---|---|---|
| 1902 | $1,210.56 | 1912 | $10,900.00 |
| 1903 | 3,042.48 | 1913 | 12,600.00 |
| 1904 | 5,024.96 | 1914 | 6,912.77 |
| 1905 | 3,822.35 | 1915 | 4,987.23 |
| 1906 | 7,257.07 | 1916 | 4,100.00 |
| 1907 | 5,169.00 | 1917 | 9,297.55 |
| 1908 | 8,308.98 | 1918 | 2,987.72 |
| 1909 | 8,119.16 | 1919 | 8,865.91 |
| 1910 | 4,324.77 | 1920 | 15,744.68 |
| 1911 | 13,055.15 | | |

Taxpayer's patents did not cover a basic principle, but only a device; other companies therefore were enabled to make and market devices embodying the same basic principle, capable of accomplishing the same work and performing the same service as the device sold by the taxpayer. The taxpayer's earnings were not solely attributable to the patents owned by it. What value, if any, the patents possessed on February 15, 1900, or on March 1, 1913, has not been established.

The taxpayer's capital stock remained at $60,000, divided into $10,000 preferred stock and $50,000 common stock, until December 30, 1907, when $5,000 of the preferred stock was retired and paid for out of surplus, the remainder of the preferred stock being retired on December 16, 1908. On January 12, 1909, $10,000 additional

common stock was issued, apparently for patents, making $60,000 common stock with no preferred stock outstanding. No change in the capitalization of the corporation has occurred since January 12, 1909.

In computing its net income for the years 1919 and 1920, taxpayer deducted in each year $3,500 as an allowance for exhaustion of the patents owned and used in its business. The Commissioner disallowed the deductions and determined a deficiency in tax for the years 1919 and 1920 in the amount of $1,504.78. The taxpayer was notified of the Commissioner's determination by registered letter October 28, 1924, from which this appeal was taken on December 6, 1924.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

LITTLETON: The taxpayer contends that its earnings are attributable solely to certain patents owned by it and that it should be permitted to determine a value therefor as of March 1, 1913, by averaging its earnings for the five years immediately preceding the year 1913, and capitalizing the resultant on a 10 per cent basis; depreciating the value so determined over the period from March 1, 1913, to April 6, 1926, the date the patent of April 6, 1909, will expire. In its petition the taxpayer also raised the issue that the Commissioner erred in limiting the amount at which the patents could be included in invested capital to 25 per cent of the par value of the stock issued therefor, claiming that it should be permitted to restore to invested capital certain amounts by which it reduced its patent, surplus, and manufacturing account during the years 1907 to 1917, inclusive. At the hearing, however, the taxpayer's counsel conceded that in any event the patents in question could not be included in invested capital at more than $15,000, which is 25 per cent of the par value of the total stock or shares of the corporation outstanding on March 3, 1917.

The evidence in this appeal discloses that the taxpayer corporation was organized with capital stock of the par value of $60,000, all of which was issued to Cheatham in exchange for his patents of 1895 and 1898, together with such other patents as might subsequently be granted to him as modifications or improvements upon the two patents mentioned. The corporation had no other assets. The patent of 1895 proved to be worthless. It is contended that the patent of 1898 covered a basic principle and that, therefore, the taxpayer's possession and ownership of that patent, together with the possession and ownership of the patent of 1902, 1905, and 1909, covering improvements on the method of applying the basic principle involved in the patent of 1898, enabled the taxpayer to place on the market a switching device that was both salable and capable of successful operation, giving it thereby a practical monopoly in the field of automatic electric switches. Based upon the claim that the 1898 patent covered the basic principle, it is contended that the patent of 1909 covered the improvement that made the device successful and

profitable, and, as the other patents issued in the interim, 1898–1909, had no real value except when used in conjunction with the patent of 1909, the value of the group of patents as of March 1, 1913, should be depreciated over the remaining life of the patent of 1909 although the other patents have expired.

The taxpayer cited in support of its contention that it possesses, and did possess after the issuance of the patent of 1909, a practical monopoly in its field, the cases of *Transit Development Co.* v. *Cheatham Electric Switching Device Co.*, and *Nassau Electric Railroad Co.* v. *Cheatham Electric Switching Device Co.*, 194 Fed. 963. In those cases which were tried before a jury, it was held that a device used by the Transit Development Company and the Nassau Railroad Company, known as "Type 14," was an infringement of the device manufactured for and sold by the taxpayer under the Cheatham patents of 1898 and 1909. However, it appears from the later case of *Cheatham Electric Switching Device Co.* v. *Brooklyn Rapid Transit Co., et al.*, 227 Fed. 613, which was not cited by the taxpayer, that the Brooklyn Rapid Transit Company, et al., were, in 1915, using a successful electric mechanical switch which was not an infringement of the device manufactured under the Cheatham patents. In that case, tried in 1915, and subsequently affirmed by the Circuit Court of Appeals for the Second Circuit, the taxpayer relied on the Cheatham patent of 1898, as covering a basic principle. The court, however, held that the patent of 1898 did not cover a basic principle but only a device, and that therefore the device used by the Rapid Transit Company and others and known as "Type 15," while employing the same basic principle as the Cheatham device, did not infringe upon it. The District Court in deciding the case said in part:

But similarity of result and equivalency in function does not make the parts mentioned the equivalent, as a whole, of the specific device set forth in claim 3 and the specifications of the Cheatham patent; nor does the court consider that the so-called "pioneer" claim of Cheatham, for a practical working device, entitles him to the use of all other practical working devices performing equivalent results.

It appears incidentally that the Patent Office had granted a patent for the No. 15 switch to one Roy V. Collins upon the 7th day of September, 1915, under No. 1,152,791. An interference in the Patent Office between Mr. Collins and Mr. Cheatham was the occasion for an affidavit by Mr. Cheatham, claiming as an inventor the so-called invention of Mr. Collins. In this affidavit Mr. Cheatham stated that the invention was new.

While it is not necessary to hold that Mr. Cheatham has thereby intentionally disavowed a broad construction of the patent in suit, nevertheless the situation created by the affidavit of Mr. Cheatham and the subsequent issuance of a patent to Mr. Collins is so entirely consistent with the interpretation which the court is making of the patent in suit that Mr. Cheatham would seem to be unable to rebut the effect of his affidavit and the presumption of the Collins patent, and it must be held that Mr. Cheatham himself has looked upon the language of his original patent as an unsatisfactory statement of what he now considers his real invention.

In *McClain* v. *Ortmayer*, 141 U. S. 419, 12 Sup. Ct. 76, 35 L. Ed. 800, the patentee was held to have abandoned an idea which he had not included in an earlier patent and which he had sought to cover by a second patent held invalid. The present case leaves Mr. Cheatham in a similar situation. The evidence shows that he may have been the first to use an idea which by its application embodied a principle broader than the idea stated in his patent. It does not appear that he understood the application of the broad principle to be of itself an invention, nor that in describing his device he attempted to

do more than to accurately state the mechanical means which he had in mind to produce the result which he realized was to be desired. He did not attempt to claim the idea of accomplishing this result by all possible mechanical means for so doing. He claimed as invention a limited physical embodiment of what might have been expressed in the form of a device for a general purpose, with every range of equivalents in its parts.

The Patent Office might have granted, if Mr. Cheatham had made the claim, a broader patent; but the court cannot now extend the scope of the present patent, and do for Mr. Cheatham what he did not do exactly 17 years ago, when he stated his own claim of his invention and of *what* he desired protection by a patent.

We are unable upon consideration of the evidence in this appeal to agree with the taxpayer that its earnings are and were attributable entirely to its patents. No one of its patents covered a basic principle, and other manufacturers were, and are, free to use the same principle used by Cheatham, so long as the devices manufactured by them do not infringe upon the Cheatham device. Other devices, capable of performing the same service, but not infringing upon the Cheatham device, were produced, marketed, and placed in operation, and we therefore conclude that the taxpayer's earnings were not only due to the patents it owned, but largely to good management and the ability of its salesmen to market its product in the face of competition.

It is incumbent upon the taxpayer to produce facts sufficient to establish a value as of March 1, 1913, for its patents before it can be allowed deductions for exhaustion in subsequent years; also to establish a value for them as of the date that they were acquired, in order to determine the amount at which they may be included in invested capital. The taxpayer has attempted to establish a value as of March 1, 1913, upon the theory that all of its earnings were attributable to the patents and to nothing else. It however has failed so to do. The patents in question may have possessed some value on March 1, 1913, and at the dates they were acquired by the taxpayer, but if such value existed, it has not been established by evidence sufficient to enable this Board to arrive at the amount thereof. Since there is no evidence before the Board upon which it can determine, with any degree of satisfaction, a value for the patents, either on March 1, 1913, or at the dates the taxpayer acquired them from Cheatham, the determination of the Commissioner must be approved.