LEGGETT & PLATT SPRING BED MANUFACTURING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 4343, 13112.  Promulgated September 12, 1927.

1. On the evidence, *held* that the actual cash value of patent at the date paid in for stock has not been established.

2. On the evidence, *held* that the March 1, 1913, value of the patent has not been established.

3. Adjustment of invested capital on account of additional income and profits taxes for prior years approved.

*Milo A. Lang, Esq.*, for the petitioner.
*John D. Foley, Esq.*, for the respondent.

This is a proceeding for the redetermination of deficiencies in income and profits taxes of $5,969.65, $3,463.87, and $2,989.61 for the years 1919, 1920, and 1921, respectively. In Docket No. 4343 for the years 1919 and 1920 the respondent admits that the net income as shown in deficiency letter dated March 24, 1925, should be reduced for the year 1919 by $2,460.92, representing depreciation in the amount of $1,289.37, and by loss by fire in the amount of $1,171.55. The remaining questions in controversy for the years 1919 and 1920 are as to the amount at which a patent alleged to have been acquired for stock should be included in invested capital, and what the value of the patent was on March 1, 1913. The issues in Docket No. 13112 are the same as those for 1919 and 1920 with an additional question as to the adjustment of invested capital for 1921 on account of additional income and profits taxes for the preceding two years.

FINDINGS OF FACT.

The petitioner is a Missouri corporation organized February 23, 1901, and having its principal place of business at Carthage. It is engaged in the manufacture and sale of patented bed springs. At the time of its organization, it acquired certain patents from a partnership. On May 12, 1908, there was issued to J. P. Leggett Patent No. 887664, relating to a frame for supporting and confining coiled springs.

About March 1, 1909, the corporation issued $150,000 par value of its captial stock in payment for the patent owned by Leggett. Leggett assigned the patent orally and turned over the original letters patent issued to him to the corporation, which has at all times since been operating under the patent, and has treated and considered it as its own. At Leggett's direction, the stock was not issued directly to

him alone, but was distributed among all the stockholders of the corporation in proportion to the amount of stock previously owned by them, Leggett receiving only his proportional share.

Leggett was one of the organizers of the petitioner corporation and one of its principal stockholders. In March, 1909, he was its president and general manager and remained such until the time of his death in May, 1921.

During the five years prior to 1908 and the four years subsequent thereto, the corporation paid dividends as follows:

| | | | |
|---|---|---|---|
| 1903 | $15,000 | 1909 | $37,500 |
| 1904 | 20,000 | 1910 | 45,000 |
| 1905 | 30,000 | 1911 | 45,000 |
| 1906 | 30,000 | 1912 | 30,000 |
| 1907 | 30,000 | | |

The following sales of capital stock were made during the years 1912 and 1913:

| | Shares | | Shares |
|---|---|---|---|
| A. J. Benecke | 25 | W. H. Phelps | 50 |
| W. W. Berry | 230 | William Brinkerhoff | 100 |
| Julia H. Williams | 25 | M. Lucas | 10 |
| C. W. Wetherell | 50 | Martie Hall | 50 |
| H. M. Kine | 50 | C. H. Colheims | 30 |
| C. A. Blase | 110 | | |

These persons were all residents of Carthage, Mo., and purchased the stock at par. The last of the above-named sales was made on October 1, 1913.

The petitioner was originally incorporated with a capital stock of $150,000. This was increased to $350,000 on March 1, 1909, and to $500,000 during 1914. Petitioner's capital stock was also $500,000 on December 31, 1920.

### OPINION.

TRAMMELL: The petitioner contends that it should be allowed to include in its invested capital for the years 1919, 1920, and 1921 an amount of $150,000, representing the value of the patent acquired from J. P. Leggett in 1909 for stock; that it should be allowed a deduction each year on account of exhaustion of the patent; and that no adjustment should be made in its invested capital for 1921 on account of additional income and profits taxes for 1919 and 1920.

The respondent contends that petitioner never acquired the patent, inasmuch as Leggett did not by an instrument in writing transfer or assign it to the corporation as required by the Revised Statutes, and denies that he committed error in excluding from invested capital the amount of $150,000 with respect thereto, contends that no amount should be included on account of such patent and that no

amount should be allowed as a deduction on account of the exhaustion thereof. The respondent further contends that no error was committed in adjusting the petitioner's invested capital for 1921 on account of additional income and profits taxes for the preceding two years.

Relative to the petitioner's contention as to including the patent in its invested capital at $150,000, section 325 of the Revenue Acts of 1918 and 1921 provides as follows:

(a) That as used in this title—

The term "intangible property" means patents, copyrights, secret processes and formulae, good will, trade-marks, trade-brands, franchises, and other like property * * *.

Section 326 of the same acts provides:

(a) That as used in this title the term "invested capital" for any year means (except as provided in subdivisions (b) and (c) of this section):

\*        \*        \*        \*        \*        \*        \*

(4) Intangible property bona fide paid in for stock or shares prior to March 3, 1917, in an amount not exceeding (a) the actual cash value of such property at the time paid in, (b) the par value of the stock or shares issued therefor, or (c) in the aggregate 25 per centum of the par value of the total stock or shares of the corporation outstanding on March 3, 1917, whichever is lowest * * *.

In order to determine the amount at which the patent may be included in invested capital it is necessary to know (1) the actual cash value of the patent at the time it is claimed to have been transferred to the corporation in 1909, (2) the par value of the stock issued therefor, and (3) the total par value of the corporation's stock outstanding at March 3, 1917. If any one of these is unknown, it can not be determined at what amount the patent should be included in invested capital.

The only evidence submitted by the petitioner in support of its contention that the patent had an actual cash value of $150,000 at the time it was paid in in 1909 was a statement of the dividends paid during the five years prior to 1908 and the four years subsequent thereto. The dividends paid during any year are by no means conclusive of the earnings of that year. Such dividends may represent undistributed earnings of a prior year or years. In any event no evidence was submitted to show what part, if any, of the dividends paid subsequent to 1908 was attributable to the patent in question. So far as the evidence shows, the petitioner's dividends might have been attributable to any one or a combination of a number of things other than the particular patent.

The fact that $150,000 par value of the stock was issued for the patent is not of itself sufficient to establish the actual cash value of

the patent at the time paid in. *Appeal of Barnes Coal & Mining Co.*, 3 B. T. A. 891; *Appeal of Wallis Tractor Co.*, 3 B. T. A. 981. From the evidence before us, we are unable to find that the patent at the time paid in had an actual cash value of $150,000 or any other amount. The action of the respondent in refusing to include the patent in invested capital must therefore be approved.

With respect to the allowance of a deduction for the exhaustion of a patent acquired prior to March 1, 1913, we said in the *Appeal of Cheatham Electric Switching Device Co.*, 1 B. T. A. 984:

It is incumbent upon the taxpayer to produce facts sufficient to establish a value as of March 1, 1913, for its patents before it can be allowed deductions for exhaustion in subsequent years * * *.

In support of its contention that the patent had a value on March 1, 1913, the petitioner submitted evidence showing that during the years 1912 and 1913 its stock was selling at par. To our minds, such sales are not conclusive as to the value of the patent on March 1, 1913. The fact that the stock was selling at par could have been due to the value of other patents owned by the company, to other property owned by it, to the earnings which might have been as great even though the petitioner did not have this patent, or to the confidence the purchasers of the stock had in the officers in charge of the corporation or other reasons. The action of the respondent in refusing to allow deductions on account of exhaustion of the patent is therefore approved.

Inasmuch as the evidence fails to establish the actual cash value of the patent at the time it is claimed to have been transferred to the corporation in 1909 as well as its value at March 1, 1913, it becomes unnecessary to consider the contention of the respondent that the petitioner never acquired the patent.

With respect to the petitioner's contention that no adjustment should be made in its invested capital for 1921 on account of additional income and profits taxes for 1919 and 1920, section 1207 of the Revenue Act of 1926 is applicable and controlling. Since it has not been shown that the adjustment made by the respondent is not in accordance with the statute, his action is approved. *Appeal of Russel Wheel & Foundry Co.*, 3 B. T. A. 1168; *Appeal of B. F. Boyer Co.*, 4 B. T. A. 180; *Appeal of Manville Jenckes Co.*, 4 B. T. A. 765; *E. B. Crabtree Co.* v. *Commissioner*, 5 B. T. A. 732.

*Judgment will be entered on 15 days' notice, under Rule 50.*

Considered by SIEFKIN, SMITH, and VAN FOSSAN.