CHEATHAM ELECTRIC SWITCHING DEVICE CO. v. TRANSIT DEVELOPMENT CO. et al.

(Circuit Court of Appeals, Second Circuit. November 19, 1919.)

No. 38.

1. PATENTS &⟶277—DAMAGES AWARDED IN ACTION FOR INFRINGEMENT NOT CONCLUSIVE IN SUBSEQUENT SUIT BY PATENTEE.

Where, in action at law for infringement of patent, jury awarded patentee practically $70 for each infringing device, held that, on patentee's subsequent bill to recover damages and profits because of use of infringing devices after action at law, as well as use of other infringing devices, verdict of jury is not conclusive standard as to amount which patentee is entitled to recover for each infringing device, for an award of damages is compensatory; hence, where the record of the action at law was relied on to show the amount of damage, only nominal damages can be allowed.

2. PATENTS &⟶324(5)—APPELLATE COURT WILL NOT CONSIDER AMOUNT OF PROFITS WHERE RELATIVELY UNIMPORTANT.

In an infringement case, where evidence as to profits of infringers was entirely unsatisfactory, and amount recoverable as profits was insignificant, compared with cost of litigation, held, that the appellate court is not disposed to disturb the ruling of the trial court as to profits.

---

&⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. PATENTS ⊂⇒326(4)—PATENTEE NOT ENTITLED TO ADDITIONAL COMPENSATION BECAUSE OF INFRINGERS' CONTEMPT.

A civil contempt in a suit for patent infringement is no ground for additional damages to the patentee, and where defendants' delay in ceasing the infringement did not result in any loss to him, the patentee cannot complain that he was merely allowed a sum sufficient to cover his expenses of investigating whether there had been a compliance with the injunctional order.

4. COSTS ⊂⇒13—ALLOWANCE IN EQUITY DISCRETIONARY.

The allowance of costs in equity is discretionary.

5. COSTS ⊂⇒187—FEES OF EXPERT WITNESS CANNOT BE TAXED AS COSTS OR DISBURSEMENTS.

While ordinarily witness fees are taxable, fees paid by defendant in an infringement suit to an expert witness cannot be taxed as costs or disbursements, for an expert cannot be required to testify as an ordinary witness, but sells his opinion, just as counsel sell their services.

Appeal from the District Court of the United States for the Eastern District of New York.

Bill by the Cheatham Electric Switching Device Company against the Transit Development Company and the Nassau Electric Railroad Company. From the final decree, plaintiff appeals, and defendants also appeal. Modified on defendants' appeal, and cause remanded, with directions.

The bill herein was filed July 14, 1911, and this case was before us in 209 Fed. 229, 126 C. C. A. 297, on appeal from an interlocutory decree. The accounting mentioned on this previous appeal having proceeded, the master reported, and the court allowed certain damages; but the master's finding that "as to profits it is not proven that the defendants made any" was confirmed by the District Judge. From the final decree, both parties have appealed.

The plaintiff brings up also the refusal of the lower court to punish, or sufficiently punish, defendants for contempt; i. e., because they did not with sufficient speed obey the preliminary injunction issued in this case. The defendants raise in addition a question of costs, which will be adverted to hereafter. It will be understood that by the word "record," as used in this opinion, is meant the record of the whole case, viz., that submitted to us in 209 Fed. 229, 126 C. C. A. 297, in addition to the one prepared on these appeals.

O. Ellery Edwards, Jr., of New York City, for plaintiff.
Thomas J. Johnston, of New York City, for defendants.

Before WARD, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge. Pursuit by plaintiff of these defendants began with an action at law, in which summons was served on or about January 4, 1911. That action was tried before a jury, and resulted in a verdict, which found in effect that defendants, or one of them, had infringed plaintiff's patent by using eight electric railway switches, as to each one of which the jury awarded plaintiff $68.93.

A writ of error was taken to this judgment, and we reviewed the case in 194 Fed. 963, 114 C. C. A. 599. This bill in equity was brought to recover such damages and profits as plaintiff might be entitled to by reason of (1) the use of said eight infringing switches after January 4, 1911; and (2) whatever similar recoveries the plaintiff might

be entitled to in respect of other similar switches not shown or proved to the jury in the action at law. The interlocutory decree (affirmed in 209 Fed. 229, 126 C. C. A. 297, and never complained of by plaintiff) provided:

"That as to the eight devices as to which a recovery has been had at law the complainant shall recover nothing further as profits or damages prior to January 5, 1911."

From the beginning one of the issues in this cause has been the relation of the Transit Development Company to the operation of these switches, and we held on the previous appeal that "the extent of the infringement will be a subject for inquiry on the accounting." On this point the master found as a fact that the Development Company—

"owns no lines of railway and no cars to be operated thereon, and neither owns nor operates nor otherwise uses any switches such as are complained of in this case."

This finding was not excepted to, and is not assigned for error.

Another issue appearing in the pleadings is whether plaintiff marked its switch as patented, as prescribed by statute, or gave notice to defendants of their alleged infringement. On this point the master made a finding unfavorable to the plaintiff, which was excepted to on the ground that—

"He should have held that each of said switches was duly marked, notice was duly given, and that defendants continued their infringing acts after such notice."

This exception the court sustained, but after examining the record we hold that plaintiff is not shown ever to have marked its switches, and that it gave no notice of infringement to the defendants, other than by bringing the action at law aforesaid on January 4, 1911.

The last of the offending devices ceased to be used (so far as this record shows) in April, 1912. The method of fixing damages pursued with partial success in the court below was as follows: Plaintiff introduced the record in the action at law (194 Fed. 963, 114 C. C. A. 599), and demanded $68.93 damages for every switch proved to have been used by any defendant because that measure of damage had once been awarded by the jury, and for the same reason the same sum was demanded, not only for every infringing switch not shown to the jury, but for each of the previously proven switches whose use continued after January 4, 1911.

[1] It is now said that this quantum of damage became res adjudicata as between the parties hereto, and that the ruling of this court in 209 Fed. 229, 126 C. C. A. 297, is to that effect. We fail to discover that that decision in any way states such doctrine; indeed, it is beyond the power of any jury, or of any judgment resting on a jury's verdict, to set a standard of damage binding on every later trier of similar facts between the same parties. The jury referred to found that by defendant's use of the eight certain switches in certain places and at a certain time plaintiff suffered a certain damage per switch. But damages (when not punitive) are compensation for plaintiff's losses under a certain set of facts and circumstances; non constat that

this plaintiff lost as much by not selling defendants a switch in the month of December as it did by a similar failure in June, and it certainly does not follow that, because plaintiff lost $68.93 by defendant's use of a switch down to the date of lawsuit brought, plaintiff lost another $68.93 by defendant's failure to remove that switch until some time later.

An assessment of damages is not the fixing of a penalty, to be inflicted every time the same defendant injures the same plaintiff. It is a valuation of injury, which, while often the same in kind, can never be assumed to be the same in degree. The use of the record here by plaintiff does not rest upon reason, while on authority it is opposed to Ecaubert v. Appleton, 67 Fed. 917, 15 C. C. A. 73; approved in Cheatham, etc., Co. v. Brooklyn, etc., Co., 238 Fed. 172, 151 C. C. A. 248, and to the reasoning in Cromwell v. County of Sac, 94 U. S. 351, 24 L. Ed. 195. There was, therefore, no evidence justifying an award of damages to plaintiff.

[2] In attempting computation of profits, plaintiff seems to have overlooked the above-recited language of the interlocutory decree and the undisputed finding of the master in respect of Transit Development Company. It certainly has assumed that defendants could be treated as liable for infringement, not from January, 1911, but from a much earlier date.

The theory of profit computation advanced is that every infringing switch dispensed wholly with the services of a switchman, who had previously been employed for every day in the year and 24 hours per day; but it is plainly proven that at few points where any infringing switch was used had a switchmen ever been employed, and that at no point had a switchman's services been utilized all day and all night.

These errors always rendered any accurate computation of profits impossible, and when it is observed that under the interlocutory decree plaintiff's right to profits on the eight switches of the action at law began with January 4, 1911, that there were not over two infringing switches of the Nassau Company which supplanted a watchman even during the "rush hours," and that all right to either profits or damages as against the Transit Development Company (in respect of switches not shown in the action at law) was swept away by the master's unopposed finding, the possible residuum of recovery in this case becomes trivial in comparison with the costs of this protracted litigation. Under such circumstances, we are not disposed to interfere with the disposition of profits made by the court below.

[3] The contempt order questioned by plaintiff's appeal arose as follows: When in 1912 the preliminary injunction herein issued, obedience thereto meant either taking down or electrically disconnecting certain pieces of apparatus situated in somewhat widely separated regions of Brooklyn. We think that defendants obeyed the injunction rather leisurely. Plaintiff employed an investigator to watch their proceedings, and then made a motion to punish for contempt; such contempt consisting in delaying the substitution of noninfringing devices in places where some apparatus was necessary to carry on the business of a public service corporation.

On this motion the court held that defendant's conduct "was not such a contempt as should be punished, beyond the expense of ascertaining whether defendants had complied" with the injunction. The judge then assessed expenses at $150, entered orders accordingly, and plaintiff accepted and retained the money. The practice pursued herein is something as to which we express no opinion, but hold that (1) in substance the court did actually declare a contempt committed, and (2) in effect fined defendants $150 therefor to the use of plaintiff.

Contempt is not to be regarded as a source of revenue or additional damages to a complainant. A civil contempt, such as this, may result in reimbursing complainant, not for infringements as to which he may seek damages and profits before a master, but for losses and expenses to which he is subjected by the offender's contumacious conduct. This record shows no loss of any kind to plaintiffs by reason of defendant's delay in disconnecting the aforesaid apparatus, and its expenses were reasonably covered by the $150. We find no error in the result now complained of.

[4, 5] The question of costs first above referred to is this: Defendants have twice paid an expert witness a considerable fee, in order that he might testify in the long series of litigations between these parties. It is urged that defendants should be permitted to tax the expert's fee on his second appearance as a disbursement. Allowance of costs, etc., in equity is discretionary, but definition of costs and taxable disbursements is a matter settled by statute or ruling authority, and we hold that expert's fees as witnesses are not legally taxable as costs or disbursements. Ordinary witness fees are taxable under the statute to be sure, but on the theory that the law requires the witness to attend and speak. An expert sells his opinion, as counsel sells his services, and he cannot by law be compelled to testify at all, while an attorney may be compelled to serve. There is considerably less reason for taxing experts' fees than might be urged for taxing the expense of legal counsel.

The decree under consideration is modified on the appeal of the defendants, and the cause remanded, with directions to enter a decree for nominal damages only. The defendant will recover one bill of costs in this court. The adjustment of costs between the parties on the entry of decree for nominal damages is a matter remitted to the discretion of the District Court.