**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**LOCAL 580, INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL AND ORNAMENTAL IRONWORKERS, Joint Apprentice–Journeyman Educational Fund . . ., Allied Building Metal Industries, Inc., Defendants.**

No. 71 Civ. 2877 (RLC).

United States District Court, S.D. New York.

Nov. 30, 1990.

E.E.O.C. (Johnnie L. Johnson, Jr. of counsel), Washington, D.C., for E.E.O.C.

Seward & Kissel (Eugene P. Souther, R. Scott Garley, of counsel), New York City, for defendants Local 580, Intern. Ass'n of Bridge, Structural and Ornamental Ironworkers, and Joint Apprentice–Journeyman Educ. Fund.

Colleran, O'Hara & Mills (Edward J. Groarke, of counsel), Garden City, N.Y., for Non–Parties Employee Benefit and Pension Benefit Funds of Local 580 and 501–507 West 42nd Street Realty Corp.

ROBERT L. CARTER, District Judge.

## BACKGROUND

Three years ago, in *EEOC v. Local 580*, 669 F.Supp. 606 (S.D.N.Y.1987) (Carter, J.), the court found defendants Local 580, International Association of Bridge, Structural and Ornamental Ironworkers ("Local 580"), and its Joint Apprentice–Journeyman Education Fund ("AJEF") in contempt of court for non-compliance with provisions of the 1978 consent judgment between themselves and plaintiff Equal Employment Opportunity Commission ("EEOC"). The court issued an order on April 15, 1988 (corrected on May 13, 1988), permanently enjoining defendants from discriminating against minorities in the creation and operation of the apprenticeship program. *See EEOC v. Local 580*, 46 Empl.Prac.Dec. (CCH) ¶ 37,953 1988 WL 38515 (S.D.N.Y. Apr. 15, 1988) (Carter, J.). The order also provided for backpay hearings to be held to compensate those who could prove that defendants discriminated against them, imposed other remedial measures upon the defendants, and provided for the appointment of a Special Master to implement the relief ordered and to ensure defendants' compliance with the consent judgment and the court's order. *See id.*[1]

---

1. The court subsequently found Local 580 in contempt of court also for failing to fulfill its obligations under the consent judgment with respect to journeyman workers. *See EEOC v.*

By its order of October 19, 1988, the court appointed David Raff, Esq., as the Special Master, and granted him all the powers and authority set forth in the court's order of April 15, 1988. The court directed him, *inter alia,* to investigate the defendants' financial condition and to "report to the Court any recommendations he may have if there is a claim by defendants that any of the relief ordered by this Court cannot be carried out because of lack of funds."

In response to defendants' contentions that their poor financial condition rendered them incapable of fully meeting their court-ordered obligations, the EEOC conducted an initial review of defendants' financial records and discovered that an entity related to Local 580, called the 501–507 West 42nd Street Realty Corporation (the "Realty Corporation"), owned the building in which the defendants leased office space. *See* Johnson Affidavit in Support of Motion to Enforce Subpoenas at 6. The EEOC also discovered that other entities related to Local 580—the Employee Benefit and Pension Benefit Funds of Local 580 (the "Local 580 Funds")—leased offices in the same building. *See id.*

The EEOC therefore sought further discovery, through three subpoenas *duces tecum,* of documents that it believed would shed light on defendants' true financial condition. It served a subpoena upon the Realty Corporation, requesting documents concerning its formation, its purchase of the building in which the defendants and the Local 580 Funds leased office space, and the occupancy by the defendants and the Local 580 Funds of offices in that building. The EEOC also served a subpoena upon the administrator of the Local 580 Funds, requesting all leases and agreements concerning Local 580's and the Local 580 Funds' occupancy of offices in the building, documents pertaining to each of the Local 580 Funds' affairs and transactions from June, 1978, onward, and copies of their audit reports and financial state-

ments from June, 1978, onward. The third subpoena was served upon the accounting firm of Owen Peterson & Company, requesting copies of all audit reports that it had prepared from 1978 to 1988 for the Realty Corporation, the Local 580 Funds, and the AJEF, as well as the workpapers that it had used to prepare such reports.

In December, 1988, the EEOC moved to enforce these subpoenas, and in January, 1989, the Realty Corporation and the Local 580 Funds (collectively the "non-parties") moved to quash. At the October 13, 1989, hearing on these motions, the Special Master rendered a decision denying the EEOC's motion, and granting the non-parties' motion, with respect to the non-parties' financial records from 1978 to 1983. *See* Transcript of Hearing of October 13, 1989, at 19. On February 12, 1990, the EEOC appealed the Special Master's decision to the court, on the grounds that these financial records of the non-parties are "necessary to determine the true and accurate financial condition of the defendants." *See* Plaintiff's Notice of Appeal. The court remanded the matter to the Special Master, directing him to grant the EEOC's motion. The Special Master thereafter issued an order vacating his decision of October 13, 1989, and granting the EEOC's motion in all respects. *See* Order of the Special Master, March 23, 1990.

The defendants and the non-parties now move to vacate the Special Master's order of March 23, 1990, and to dismiss the EEOC's notice of appeal of February 12, 1990. The non-parties also request, in the event that the court denies the defendants' and the non-parties' motion to vacate, certification of the question pursuant to 28 U.S.C. § 1292(b) and a stay of production pending appeal.

## DISCUSSION

■ Most of the defendants' and the non-parties' arguments in support of their motion stem from an erroneous application

*Local 580,* No. 71 Civ. 2877, slip op., 1988 WL 131293 (S.D.N.Y. Dec. 15, 1988) (1988 U.S. Dist. LEXIS 14205) (Carter, J.). The court expanded the Special Master's authority to include super-vision of Local 580's compliance with all of the court's orders respecting the admission, selection, training and employment of journeyman workers. *See id.*

of Rule 53(e)(2), F.R.Civ.P. They argue, in essence, that the EEOC's notice of appeal was untimely and defective under Rule 53(e)(2); that the court erred in directing the Special Master to reverse himself because it did not follow the procedures outlined in Rule 53(e)(2); and that the court should have accepted the Special Master's decision of October 13, 1989 because it was not "clearly erroneous," the standard of review that Rule 53(e)(2) prescribes with respect to a Special Master's findings of fact.

Rule 53(e)(2), however, governs cases in which a party objects to a Special Master's report to the court containing his findings of fact and conclusions of law. Because the instant dispute does not involve any such report by the Special Master to the court, Rule 53(e)(2) simply does not apply. *Cf. Morgan v. Kerrigan,* 530 F.2d 401, 411 n. 13 (1st Cir.), *cert. denied,* 426 U.S. 935, 96 S.Ct. 2648, 49 L.Ed.2d 386 (1976); 5A Moore's Federal Practice ¶¶ 53.12[2], 53.-12[4].

■ Moreover, on the merits, the EEOC is entitled to production of the non-parties' financial records from 1978 to 1983. Since the defendants have previously been held in contempt for failure to comply with the consent judgment between the parties, and now seek to excuse themselves from fully meeting its court-ordered obligations on grounds of financial impossibility, the EEOC should be afforded great latitude in its attempts to discover and bring to the court's and the Special Master's attention any information pertaining to the defendants' financial condition.

The non-parties contend that, since they are legally separate from the defendants and are not statutorily or contractually obligated to pay any of defendants' debts, their own financial records are irrelevant to the determination of defendants' financial situation. This contention construes too narrowly the reasons underlying the EEOC's inquiry into the non-parties' financial records. The EEOC's accounting expert's examinations of previously produced documents revealed apparent linkages between the defendants and the non-parties, in the form of, among other things, allocation of revenues and expenses through a central "funds office." *See* Affidavit of Stanley J. Moskowitz, C.P.A., in Support of Motion to Enforce Subpoenas ("Moskowitz Affidavit"). The EEOC has therefore had cause to inquire into all financial arrangements and transactions between the defendants and the non-parties in order to ascertain whether, in fact, the defendants' financial resources are as limited as they have claimed.

While the EEOC's expert accountant has been able to review the defendants' financial records, he has stated that examination of the non-parties' financial records is necessary for a complete and meaningful report to be rendered on the defendants' financial condition. *See* Moskowitz Affidavit at 1. In addition, at the hearing during which the Special Master made his original decision denying the EEOC's motion with respect to the non-parties' financial records, the EEOC's expert accountant stated:

> We finally reached a conclusion that we were never going to be able to satisfy ourselves completely as to all of the things without being able to see the other half of the picture, and that was the [non-parties'] books and records. We have some particular concerns with regard to rent, buildings, possibility of income having come in from sales of assets and it is essentially our position at this point that we are not going to be able to present our opinion on what has happened without having the opportunity to review the rest of the sets of records.

Transcript of Hearing of October 13, 1989, at 12–13.

Under these circumstances, the EEOC has shown that the non-parties' financial records are both relevant and necessary to resolve the all-important issue of defendants' financial condition. Moreover, neither the defendants nor the non-parties have shown that production of these records would be unreasonable and oppressive. *See* Rule 45(b), F.R.Civ.P.

■ In light of the court's decision today to deny the defendants' and the non-par-

ties' motion to vacate, which is in practical effect a denial of a motion to quash a subpoena, the court now turns to the non-parties' request for certification of the question pursuant to 28 U.S.C. § 1292(b) and a stay pending appeal. As a rule, denial of a motion to quash a subpoena is not appealable; one must either obey the subpoena's commands or refuse to do so and challenge the validity of the subpoena if one is later held in contempt for failure to obey. *See, e.g., United States v. Ryan,* 402 U.S. 530, 532, 91 S.Ct. 1580, 1581, 29 L.Ed.2d 85 (1971); *Kaufman v. Edelstein,* 539 F.2d 811, 814 (2d Cir.1976).

■ The court is not of the view that this interlocutory order involves "a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Accordingly, certification of the question pursuant to 28 U.S.C. § 1292(b) is not warranted. Since the non-parties cannot directly appeal the instant order, a stay of production at this juncture would be pointless.

## CONCLUSION

For the reasons stated above, the defendants' and non-parties' motion to vacate the Special Master's order of March 23, 1990, and to dismiss the EEOC's notice of appeal, is denied. The non-parties' request for certification pursuant to 28 U.S.C. § 1292(b) and a stay pending appeal is also denied. Accordingly, the non-parties are hereby directed to produce all of the financial records requested of them in the EEOC's subpoenas *duces tecum,* including their financial records from 1978 to 1983. The non-parties shall make such documents available for the EEOC's review by December 21, 1990.

IT IS SO ORDERED.